UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JON A. SHEAFFER *et al*, | ) | CASE NO. 3:26-CV-00056 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | June 18, 2026 |
| *Defendant*. | ) | |

**ORDER REMANDING CASE TO THE SUPERIOR COURT FOR THE JUDICIAL DISTRICT OF HARTFORD (ECF NO. 18)**

Kari A. Dooley, United States District Judge:

This action, commenced in the State of Connecticut Superior Court for the Judicial District of Hartford, was removed by Defendant, Wells Fargo Bank, N.A. (Wells Fargo) on January 13, 2026. On March 27, 2026, Plaintiffs filed the instant Motion for Remand challenging this Court's subject matter jurisdiction to hear this case. *See* Mot. to Remand, ECF No. 18. In response, Wells Fargo argues that this Court has federal question jurisdiction and remand is not appropriate. *See* Opp., ECF No. 24. For the reasons that follow, the Court agrees with Plaintiffs. This matter must be remanded to the Superior Court for the Judicial District of Hartford.

**Allegations**

Plaintiffs allege that Wells Fargo, as servicer of their mortgage, improperly credited their monthly mortgage payments in a manner that violated the original loan agreement and the loan agreement as modified, which, in turn, created a higher effective interest rate return on the loan for Wells Fargo. *See* Mot. to Remand, ECF No. 18-1 at 2. In particular, Plaintiffs allege that in 2013, they became aware of a government mortgage assistance program designed "to improve the borrowers' terms of existing mortgage loans." Ex. A, ECF No. 1-1 at 4. Wells Fargo determined that Plaintiffs were suitable candidates for the program and in 2014, the parties executed a Loan

Modification Agreement. *Id*. at 4–5. In 2022, Plaintiffs sought to sell their home and hired an attorney to assist them with the sale. *Id*. at 5. Upon securing a buyer, Plaintiffs discovered the proceeds they were to receive from the sale were substantially less than anticipated. *Id*. Plaintiffs' attorney indicated as such to Wells Fargo and requested a loan payment history. *Id*. Wells Fargo provided the loan payment history together with a letter indicating that its principal balance calculation was correct and would not be lowered. *Id*. However, the principal balance was inflated because Wells Fargo had failed to properly credit Plaintiffs' monthly payments under the Loan Modification Agreement in a timely fashion. *Id*. at 5–6.

Plaintiffs bring a single claim against Wells Fargo: a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a *et seq*. Plaintiffs do not bring any causes of action sounding in federal law.

**Discussion**

District courts have "original jurisdiction of all civil actions rising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. Whether a case arises under the laws of the United States is determined by looking to the "well-pleaded complaint" rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Under that rule, federal-question jurisdiction generally 'exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *State ex rel. Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023). The rule essentially makes Plaintiff "the master of the claim." *Id*. (quoting *Caterpillar*, 482 U.S. at 392). And it is beyond dispute that a Plaintiff "may avoid federal jurisdiction by exclusive reliance upon state law." *Id*. (quoting *Caterpillar*, 482 U.S. at 392). "[I]n other words, the 'general rule' is that federal courts lack federal-question jurisdiction 'if the complaint does not affirmatively allege a federal claim.'" *Id*. (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)) (citation omitted).

There are three "tightly circumscribed" exceptions to the well-pleaded complaint rule. *Id*. at 133. Relevant here is the situation where "vindication of a state law right necessarily turns on a question of federal law." *Id*. (alteration omitted) (quoting *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014)). In assessing this exception, Courts apply the so-called *Grable/Gunn* framework. *Id*.; *see also Grable & Sons Metal Prods., Inc. v. Darue Engr. & Mfg.*, 545 U.S. 308 (2005); *Gunn v. Minton*, 568 U.S. 251 (2013). Under that framework, federal question jurisdiction may be found to exist over state law claims if an issue of federal law is: "(1) necessarily raised; (2) actually disputed; (3) substantial and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Exxon Mobil*, 83 F.4th at 140 (quoting *Gunn*, 568 U.S. at 258).

"For a 'federal issue' to be 'necessarily raised,'" under *Gunn*, *id*. (quoting *Gunn*, 568 U.S. at 258), "'the mere *presence* of a federal issue in a state cause of action' is insufficient; the pertinent 'question of federal law' must be 'a *necessary element* of one of the well-pleaded state claims.'" *Id*. (emphasis in original) (quoting *City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 176 (2d Cir. 2004)). A state-law claim necessarily raises federal questions where the claim is affirmatively premised on a violation of federal law. *Id*. Put another way, if a "court could . . . resolve the case without reaching the federal issues" then "the claims do not necessarily raise a federal issue." *Id*. (quoting *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012) (cleaned up)).

*CUTPA*

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It also provides that "[a]ny person who suffers any ascertainable loss of money or

property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." *Id*. at § 42-110g(a).  A CUTPA claim consists of three basic elements: (1) an ascertainable loss of money or property (2) that was caused by an unfair method of competition or an unfair or deceptive act (3) that occurred in the conduct of trade or commerce.  *Cenatiempo v. Bank of Am., N.A.*, 219 A.3d 767, 781–83 (Conn. 2019).

> [Connecticut courts] have adopted the criteria set out in the cigarette rule by the Federal Trade Commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . ; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . . All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy.

> *Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013) (citation omitted) (cleaned up).

Wells Fargo argues that this Court has federal question jurisdiction because Plaintiffs' Complaint expressly relies on federal law, namely the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 1639f ("Dodd-Frank Act") and Rules and Regulations of the Consumer Financial Protection Bureau ("CFPB"), 12 C.F.R. § 1026 (2026).  Opp., ECF No. 24 at 1.  Wells Fargo contends that the alleged violations of federal law are the genesis of Plaintiffs' CUTPA claim.  *Id*. at 5.  Thus, Wells Fargo asserts that under the *Grable/Gunn* Rule, this Court has jurisdiction over the CUTPA claim because the issues under the Dodd-Frank Act and the CFPB are necessarily raised, actually disputed, substantial, and capable of resolution in federal court.  *Id*. at 1–2.  *See also Grable*, 545 U.S. at 312; *Gunn*, 568 U.S. at 258.  Wells Fargo further argues that under the well-pleaded complaint rule, removal is appropriate because "vindication of a state[-]law

right necessarily turns on a question of federal law."  Opp., ECF No. 24 at 4 (quoting *Exxon Mobil*, 83 F.4th at 133) (alteration in original) (citation omitted).

Plaintiffs argue that their Complaint arises under CUTPA and that it is necessary under the cigarette rule to consider whether the acts or practices at issue offend public policy.  Mot. to Remand, ECF No. 18-1 at 1.  To reach that determination, Courts must consider interpretations given by the Federal Trade Commission and the federal courts pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).  Reply, ECF No. 27 at 2–3; *see also Cenatiempo*, 219 A.3d at 781–82.  Plaintiffs further note that Wells Fargo has failed to even acknowledge the cigarette rule promulgated by the FTC, which the Connecticut Supreme Court has found to be essential to the CUTPA statutory scheme.  *See* Reply, ECF No. 27 at 1.  Plaintiffs explain that their reference in the Complaint to the Dodd-Frank Act and the CFPB were for the limited purpose of demonstrating that the CUTPA claim satisfies the public policy criteria of the cigarette rule.  *Id*.

The Court agrees with Plaintiffs.

Preliminarily, Wells Fargo's argument turns the well-pleaded complaint rule on its head. The rule is a mechanism by which, *inter alia*, federal question jurisdiction may be avoided, not a mechanism by which federal question jurisdiction can be created over a plaintiff's objection.  *See*, *e.g.*, *In re Applications of Nuclear Generation Emps. Assn. v. New York Power Auth.*, 145 F. Supp. 2d 291, 297 (S.D.N.Y. 2001) ("under the well-pleaded complaint rule, plaintiff is 'master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available.'" (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)).

In any event, Wells Fargo's argument fails at the first inquiry — whether the federal question is necessarily raised.  *See Exxon Mobil*, 83 F.4th at 140.  At bottom, Plaintiffs do not need to establish any violation of federal law — whether the Dodd-Frank Act or Rules and Regulations

5

of the CFPB — in order to prevail on their CUTPA claims.  That they cite these laws in support of the claim that the Defendant's conduct violated public policy, does not require the finder of fact to resolve issues of federal law.[1]  And Connecticut Courts have long recognized statutory and regulatory schemes as an appropriate source for discerning public policy.  *See Cenatiempo*, 219 A.3d at 784 (Recognizing that federal lending statutes can demonstrate a "public policy" for purposes of CUTPA); *Schoonmaker v. Cummings & Lockwood of Conn., P.C.*, 747 A.2d 1017, 1025 (Conn. 2000) (Observing that the Connecticut Supreme Court has oft looked to statutes, administrative decisions or case law to determine public policy.); *MedValUSA Health Progs., Inc. v. Memberworks, Inc.*, 872 A.2d 423, 438 (Conn. 2005) (Describing the various sources for discerning public policy to include both criminal and noncriminal statutory schemes).  In short, proving a violation of Dodd-Frank or the CFPB Regulations is not a "necessary element" of Plaintiff's CUTPA claim.  *See Exxon Mobil*, 83 F.4th at 140.  Indeed, Plaintiff may yet identify additional public policies implicated by Wells Fargo's alleged improper accounting of consumers' mortgage payments and the commensurate result of collecting higher interest rates from consumers than was bargained for by the borrowers.

Alternatively, Plaintiffs may prevail on their CUTPA claim if the fact finder determines that the conduct proven is immoral, unethical, unscrupulous and oppressive and/or causes substantial injury to consumers.  *See Cenatiempo*, 219 A.3d at 782–83 (quoting *Ulbrich*, 78 A.3d at 100).  Such a determination would eschew the public policy inquiry altogether.  *Exxon Mobil*, 83 F.4th at 142 (concluding that Plaintiff's CUTPA claims could be decided without reaching any

---

[1] To the extent Wells Fargo decries Plaintiffs' purported effort to recast their allegations as pertaining to public policy only, the Court agrees that the Complaint is susceptible to differing interpretations as to the import of the allegations regarding the Dodd-Frank Act and the CFPB Regulations.  However, Plaintiffs' clarification, even if fairly characterized as such, is for Plaintiffs to make.  It is their complaint.  *See*, *e.g.*, *In re Applications of Nuclear Generation Emps. Assn.*, 145 F. Supp. 2d at 297.

federal issue and thus affirming the district court remand.); *see also Shinnecock Indian Nation*, 686 F.3d at 140.  And although the purported federal issues raised in *Exxon Mobil* were decidedly different than those relied upon by Wells Fargo here, the Court sees no meaningful distinction between this case and the actual holding of *Exxon Mobil*.  Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' single state law claim.

**Conclusion**

For the foregoing reasons, the Clerk is directed to remand the matter to the Superior Court for the Judicial District of Hartford.

**SO ORDERED** this 18th day of June 2026 at Bridgeport, Connecticut.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE